## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Arther G. Barkley

October 19, 1995

Case No. (Criminal) 16422

BY JUDGE MARCUS D. WILLIAMS

This matter is before the Court on defendant's motions raised at his commitment hearing on August 16, 1995. Defendant contends that the Court did not comply with Va. Code § 19.1-239 (1972) because it failed to follow proper commitment procedures twenty-four years ago, and as a result, the Court no longer has jurisdiction over this case. Defendant also argues that the Court has not conducted review hearings as Va. Code § 19.2-182.5 (1992) requires; thus, defendant maintains he is entitled to release from Southwestern State Hospital.

On June 4, 1970, the defendant, Mr. Barkley, hijacked a TWA flight from Phoenix, Arizona, to Washington, D.C. After the plane landed at Dulles International Airport, a gun fight ensued resulting in the pilot being shot. A grand jury later indicted Mr. Barkley for abduction, maiming, and robbery, and on November 16, 1971, the Court found Mr. Barkley not guilty by reason of insanity. Additionally, the Court placed Mr. Barkley in the temporary custody of the Commissioner of Mental Hygiene and Hospitals ("Commissioner") and appointed three psychiatrists to investigate Mr. Barkley's sanity and to determine whether his discharge would be dangerous.[1]

---

[1] Of the three psychiatrists appointed to evaluate Mr. Barkley, two reported that Mr. Barkley retained abnormal ideas after the hijacking incident. Dr. Wegielski concluded that Mr. Barkley continued to threaten public peace and safety; Dr. Hansen reported that

The record reflects that the Court received three reports evaluating Mr. Barkley's condition.[2] There is no record, however, that the Court subsequently conducted a permanent custody hearing or that Mr. Barkley was ordered into the Commissioner's permanent custody. Nevertheless, Mr. Barkley remained hospitalized at Southwestern State Hospital from November 16, 1971, to the present.

On September 26, 1972, Dr. Wegielski, one of the psychiatrists appointed to evaluate Mr. Barkley, wrote the Court "to inquire if any decision regarding . . . [Mr. Barkley] had been made by the Court." Judge Barnard Jennings responded in a letter dated October 12, 1972:

> I have re-examined the reports from the various doctors involved in this matter, and I would think that it would be appropriate for you to arrange a treatment program for Mr. Barkley.
>
> There is nothing pending in court at this time with respect to the matter, and I would not anticipate any court action in the near future in view of the contents of your report, as well as the doctors concerned.

No one at Southwestern State Hospital corresponded with the Court again until May 22, 1975, when the Director, Dr. Merker, reported that Mr. Barkley was restored and requested his release. Thereafter, on June 6, 1975, the Court ordered that two psychiatrists examine Mr. Barkley and consider his release. Dr. Merker wrote the Court again on August 5, 1975, explaining that Mr. Barkley had refused to speak with the two psychiatrists and concluding that Mr. Barkley was not ready for release.

The Court received reports on Mr. Barkley's condition during the course of his confinement.[3] Doctors generally reported that Mr. Barkley's condition remained unchanged: Mr. Barkley continued to suffer from a paranoid

---

Mr. Barkley did not appear dangerous, but he stated that the normal stresses of community life might exacerbate Mr. Barkley's illness. The third psychiatrist, however, reported that Mr. Barkley was not insane at the time of his evaluation on March 14, 1972, and concluded that Mr. Barkley's release would not be dangerous.

[2] Dr. Kirven submitted a report dated March 14, 1972; Dr. Wegielski prepared a report on April 20, 1972; and Dr. Hansen's report is dated August 14, 1972.

[3] The Court received correspondence concerning Mr. Barkley's condition on or about the following dates: July 21, 1976; January 4, 1979; April 18, 1980; January 6, 1982; January 3, 1983; September 27, 1984; September 10, 1986; September 30, 1987; September 22, 1988; August 21, 1989; April 12, 1990; May 8, 1991; October 6, 1993; October 14, 1994; May 8, 1995; May 16, 1995; July 25, 1995; and August 10, 1995.

condition, and he retained delusional ideas of government persecution. In 1982, however, Dr. Rosenquist, Director of Southwestern State Hospital, reported that Mr. Barkley refused to converse with the professional clinical staff, but no staff members had heard Mr. Barkley express delusional ideas for several years. Dr. Rosenquist concluded that Mr. Barkley could be released without substantial danger to the public. The Court responded by ordering two psychiatrists to examine Mr. Barkley and to report on his mental condition. On February 8, 1982, the two psychiatrists informed the Court that although they had attempted to evaluate Mr. Barkley, they could offer no opinion on Mr. Barkley's condition because he refused to speak to them. In 1983, Dr. Rosenquist against expressed doubt about Mr. Barkley's potential danger to the public but did not request Mr. Barkley's release. The Court took no action following that report.

In a letter dated May 16, 1995, Dr. Mears, Forensic Coordinator at Southwestern State Hospital, requested a new order in Mr. Barkley's case. Thereafter, the Court arranged a permanent custody hearing for August 16, 1995. When Mr. Barkley appeared for the permanent custody hearing, he raised two motions and argued that he is entitled to release. Mr. Barkley first contends that during his initial commitment in the winter of 1971-72, the Court denied his rights under Va. Code § 19.1-239 (1971) by (1) failing to provide a permanent commitment hearing, and (2) neglecting to issue an order directing Mr. Barkley to be held in permanent custody by the Commonwealth. Consequently, Mr. Barkley concludes, this Court has no jurisdiction over this case because the Commonwealth has held Mr. Barkley for twenty-four years without a proper order. In Mr. Barkley's second motion, he asserts that the Commonwealth is holding him unlawfully under the more recently enacted statute, Va. Code § 19.2-182.5 (1992), because Mr. Barkley has been denied his right to annual review proceedings. The Court deferred ruling on the motions and evaluated Mr. Barkley pursuant to Va. Code § 19.2-182.3 (1995), the current commitment provision. The Court found that Mr. Barkley remains mentally ill, dangerous, and in need of in-patient hospitalization; thus, the Court ordered Mr. Barkley to remain in the custody of the Commissioner permanently.

## Questions Presented

Mr. Barkley's motions raise four issues for the Court's consideration: (1) Whether the Court denied Mr. Barkley's rights under Va. Code § 19.1-239 (1972) by failing to conduct a custody hearing and issue an order when the Court initially committed Mr. Barkley in November, 1971; (2)

whether such statutory noncompliance divests the Court of jurisdiction over Mr. Barkley's case; (3) whether the Court's failure to conduct annual assessment hearings after 1992 denied Mr. Barkley's rights under Va. Code § 19.2-182.5 (1992); and (4) whether release from confinement is proper to remedy infringements of Mr. Barkley's rights.

A. *Requirements of Va. Code § 19.1-239 (1972) As It Pertains to Permanent Commitment*

Mr. Barkley argues that the Court did not comply with Va. Code § 19.1-239 (1972) during Mr. Barkley's initial commitment in 1971-1972 because (1) Mr. Barkley did not have a permanent commitment hearing, and (2) the Court did not issue an order directing Mr. Barkley to be held in permanent custody by the Commonwealth. Va. Code § 19.1-239 provides, in relevant part:

> When the defense is insanity . . . of the defendant . . . the court shall place . . . [him] in temporary custody of the Commissioner of Mental Hygiene and Hospitals . . . ["the Commissioner"] and appoint three physicians . . . to examine the defendant . . . to determine whether or not, at the time of their examination, he is insane . . . and to determine whether his discharge would be dangerous to the public peace and safety or to himself and to report their findings to the court. If the court is satisfied by the report, or such testimony of the examining physicians . . . that the defendant is insane . . . or that his discharge would be dangerous to public peace and safety or to himself, the court *shall order* him to be committed to the custody of the Commissioner. Otherwise, the defendant forthwith shall be discharged and released.

(Emphasis added.)

The record demonstrates that on November 16, 1971, when the Court placed Mr. Barkley in the temporary custody of the Commissioner, the Court appointed three psychiatrists to evaluate Mr. Barkley and to report on his condition. The Court received these reports, but it does not appear from the record that the Court thereafter conducted a hearing concerning Mr. Barkley's permanent disposition. The Court's failure to hold a permanent custody hearing, however, did not violate Va. Code § 19.1-239. The plain language of the statute does not require any such hearing. Rather, the language of that section implies that the Court is to review the evaluation

reports and determine whether to commit or to release the defendant. In this case, the Court reviewed the psychiatrists' reports and determined that Mr. Barkley should remain hospitalized.[4]

Nevertheless, it is clear that the Court did not fully comply with the mandate of Va. Code § 19.1-239 which directs the Court to enter a commitment order if the doctors' reports satisfy the Court that the defendant is insane or dangerous. In this case, there was no decision of record concerning Mr. Barkley's condition and no commitment order. Although the Court informally determined that Mr. Barkley should remain hospitalized,[5] the Court did not enter an order reflecting that decision.

## B. *Jurisdiction*

Mr. Barkley asserts that this Court lacks jurisdiction in this case because no permanent custody order was entered as Va. Code § 19.1-239 requires. In light of *Commonwealth v. Rafferty*, 241 Va. 319 (1991), and *Jamborsky v. Baskins*, 247 Va. 506 (1994), the Court rejects this argument.

*Rafferty* involved an administrative proceeding against a defendant who refused to submit to blood or breath testing after police stopped him for drunk driving. Defendant argued that the proceeding was invalid because when the magistrate charged defendant with the violation, the magistrate did not attach to the warrant a certificate of defendant's refusal to submit to testing, as Va. Code § 18.2-268(Q) requires. 241 Va. at 324. The Supreme Court rejected defendant's argument stating that "[a] statute directing the mode of proceeding by public officers is to be deemed directory, and a precise compliance is not to be deemed essential to the validity of the proceedings unless so declared by statute." *Id.* (quoting *Nelms v. Vaughan*, 84 Va. 696, 699 (1888)).

Va. Code § 19.1-239 (1972) requires courts to enter a permanent commitment order after receiving three doctors' reports, which the Court failed to do in this case. Nevertheless, much like the provision at issue in *Rafferty*, Va. Code § 19.1-239 directs the mode of proceeding by the Court and is therefore deemed directory. The Court's precise compliance with the provision is not necessary to the validity of proceedings involving Mr.

---

[4] *See* Letter from Judge Barnard Jennings to Dr. Wegielski dated October 12, 1972 (hereinafter "October 1972 Letter"). "I have re-examined the reports from the various doctors involved in this matter, and I would think that it would be appropriate for you to arrange a treatment program for Mr. Barkley."

[5] *See* October 1972 Letter.

Barkley because Va. Code § 19.1-239 does not otherwise state that strict compliance is mandatory or jurisdictional.

In *Baskins*, the Supreme Court considered whether in juvenile transfer proceedings, a circuit court retains jurisdiction where that court does not enter an order concerning further disposition of the case within twenty-one days as required by Va. Code § 16.1-269(E). The Supreme Court first determined whether that section conferred a substantive right or merely stipulated procedure. In cases where a court violates a statute and thereby denies a juvenile's substantive right, the court loses jurisdiction. *See* 247 Va. at 509-10. In cases like *Baskins*, however, where a court violates a statute but does not infringe a substantive right, the court retains jurisdiction. Thus, although the circuit court in *Baskins* entered an order assuming jurisdiction over the case three days after the 21-day period expired, the court nevertheless retained jurisdiction. *Id.* at 511.

Like the juvenile transfer provision discussed in *Baskins*, the provision of Va. Code § 19.1-239, which directs the court to order a defendant into the custody of the Commissioner, does not confer a substantive right. That provision merely stipulates procedure; therefore, the Court retains jurisdiction in this case, even though the Court did not strictly comply with Va. Code § 19.1-239.

## C. *Requirements of Va. Code § 19.2-182.5 (1992)*

Mr. Barkley also contends that the Court has denied his rights under the new statute, Va. Code § 19.2-182.5 (1992), because the Court has not conducted annual review proceedings since the statute took effect in 1992. Va. Code § 19.2-182.5 provides in part:

> The committing court shall conduct a hearing twelve months after the date of commitment to assess each confined acquittee's need for in-patient hospitalization. A hearing for assessment shall be conducted at yearly intervals for five years and at biennial intervals thereafter. The court shall schedule the matter for hearing as soon as possible after it becomes due, giving the matter priority over all pending matters before the court.

The record demonstrates that before the hearing held on August 16, 1995, Mr. Barkley did not have any review hearings.[6] At a minimum, Mr. Bar-

---

[6] Until the General Assembly enacted Va. Code § 19.2-182.5 in 1992, the Code did not mandate automatic review proceedings. Under the predecessor statute, an acquittee was

kley should have had biennial hearings beginning with the enactment of Va. Code § 19.2-182.5 in 1992. Because Mr. Barkley was never permanently committed, however, he may have been entitled to annual hearings beginning in 1992. Under either scenario, the Court did not follow the requirements of Va. Code § 19.2-182.5.

D. *Appropriate Relief for Failure to Enter Permanent Commitment Order or to Conduct Periodic Review Hearings*

Mr. Barkley argues that he is entitled to release because the Court did not comply with certain procedures set forth in Va. Code §§ 19.1-239 (1972) and 19.2-182.5 (1992), and as such, the Commonwealth is holding him unlawfully. This argument raises the following question. Where a court failed to follow statutory procedures when committing and confining a defendant found not guilty by reason of insanity, is release an appropriate remedy?

*Robinson v. Winstead*, 189 Va. 100 (1949), instructs that even where commitment proceedings are void, release is not always the appropriate remedy. In that case, a commission involuntarily committed a minor without notifying the minor's custodian of the commitment proceedings as required by statute. *Id.* at 102. After concluding that the commitment was void, the Supreme Court considered whether, in light of the invalid commitment, the minor was entitled to discharge. The Court stated:

> It is true that "although the confinement of an insane person is illegal, if his going at large will be dangerous to himself or to other people, he will not be set at liberty under a writ of habeas corpus but will be detained to permit a legal commitment to be secured under proper proceedings."

*Id.* at 108 (quoting 25 Am. Jur., *Habeas Corpus*, § 84). The Court found that the minor was entitled to discharge because there was no evidence that the minor was dangerous. *Id.*

Applying *Robinson* to the case at bar, it is clear that Mr. Barkley's release is not appropriate to remedy the Court's failure to comply with Va.

---

entitled to a hearing when the superintendent of the state mental hospital or the acquittee requested release, and the report of at least two qualified psychiatrists did not satisfy the court that the acquittee was no longer insane or dangerous. *See* Va. Code § 19.2-181 (1975). In Mr. Barkley's case, the Director of Southwestern State Hospital requested release on May 22, 1975, and January 6, 1982, but the Court did not hold review hearings because Mr. Barkley refused to speak to the qualified psychiatrists both times.

Code §§ 19.1-239 (1972) and 19.2-182.5 (1992). While it is true that the Court failed to order Mr. Barkley into the custody of the Commissioner in 1972 and neglected to hold annual review hearings, it is also true that Mr. Barkley is mentally ill and would be dangerous to the public and/or to himself if he were released. Thus, discharge is not the appropriate remedy. At best, Mr. Barkley is entitled to a proper hearing under the current statute. The Court provided Mr. Barkley with such a hearing on August 16, 1995.

In *Jamborsky v. Baskins*, after the Supreme Court determined that a circuit court may retain jurisdiction even though that court fails to enter a timely order in violation of the Code, the Court explained:

> Our decision is based on the uncontroverted fact that . . . [defendant] did not suffer any prejudice as a result of the delay in the entry of the circuit court order. Any determination whether a defendant has suffered prejudice constituting a denial of due process must be made on a case-by-case basis.

247 Va. at 511. Similarly, this Court finds that Mr. Barkley has suffered no prejudice as a result of the Court's failure to enter a permanent custody order in 1972 or to conduct periodic review hearings. Based on the evidence presented at the hearing on August 16, 1995, the Court finds that Mr. Barkley was mentally ill and dangerous in 1972 and has remained so until the present. Mr. Barkley has suffered no prejudice because in-patient hospitalization has been necessary from November 16, 1971, to the present.

For the foregoing reasons, defendant's motions are denied.